# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | | |
|---|---|---|
| **ROBERT A. MEYERS,** | ) | **CASE NO. 1:14 CV 2340** |
| | ) | |
| **Plaintiff,** | ) | **JUDGE DONALD C. NUGENT** |
| | ) | |
| **v.** | ) | |
| | ) | **MEMORANDUM OF OPINION** |
| **CITY OF CHARDON, *et al.*,** | ) | |
| | ) | |
| **Defendants.** | ) | |

*Pro se* Plaintiff Robert A. Meyers filed the above-captioned action under 42 U.S.C. § 1983

in the Geauga County Court of Common Pleas against the City of Chardon, the Chardon Police

Department, Chardon Police Officer Jason S. Bryant, Chardon Police Officer Byron W. Childs, and

the Geauga County Sheriff. In the Complaint, Plaintiff alleges Officers Bryant and Childs used

excessive force during his arrest, denied him medical care for his injuries, did not recite Miranda

warnings when they arrested him, and conducted a traffic stop in violation of the Fourth

Amendment. He asserts the City of Chardon, the Chardon Police Department and the Geauga

County Sheriff are liable for the Officers' actions because they did not enforce policies, or conduct

a proper investigation. He seeks $ 5,000,000.00 in damages from each Defendant.

The Defendants removed this action to federal court on October 21, 2014. Plaintiff objected

to the removal by filing a Motion for Objection and Answer to Notice of Removal (ECF No. 6)

asserting that the case should not have been removed because the state court may adjudicate federal

questions when the state court has original subject matter jurisdiction.  The Defendants responded

to his Motion and Plaintiff filed a Motion to Strike their Responses.  (ECF No. 9).  For the reasons

set forth below, those Motions are denied.

The Defendants filed Motions for Summary Judgment pursuant to Federal Civil Procedure

Rule 56 as to all of the Plaintiff's claims.  (ECF Nos. 12 and 15).  Plaintiff has not responded to these

Motions.  For the reasons stated below, the Motions for Summary Judgment are granted, and this

action is dismissed.

### Factual and Procedural Background

The Complaint is very brief and contains few facts.  It consists largely of legal conclusions.

Plaintiff states that on June 15, 2014, Bryant and Childs "use[d] excessive force by an abrupt force

of 'slamming' the Plaintiff's face into the back of his truck cap that resulted in injuries to his face

that were profusely bleeding... ."  (ECF No. 1-1 at 5, ¶ 11).  He also alleges that Bryant and Childs

"use[d] excessive force by abruptly and tightly forcing the handcuffs upon the Plaintiff's wrists that

resulted in substantial injuries and bruises... ."  (ECF No. 1-1 at 5, ¶ 12).  He claims he was not

resisting arrest, did not refuse to comply with orders and was cooperative with the Officers.  He

asserts that the Officers did not respond with objectively reasonable actions, did not read him

Miranda warnings at the time of his arrest, and did not provide him with immediate medical attention

for his injuries.

The majority of the factual allegations in this action were provided by the Defendants in their

Motions for Summary Judgment.  They allege that at 5:11 p.m. on June 15, 2014, the Geauga County

Sheriff's Office received a call reporting a potential drunk driver.  A local resident claimed she was

being followed by a red pickup truck that was being driven erratically.  She reported that the truck

-2-

was swerving back and forth across the center line and into the lane of on-coming traffic.  She

indicated that at times the driver of the truck would drive so close to her vehicle that she could not

see the headlights and then it would slow down significantly.  She took down the license plate

number and changed her route home to get away from the truck.  Another driver also telephoned the

Sheriff's Office to report that the red pickup truck hit the curb several times while traveling at an

excessive rate of speed.  This driver also provided dispatch with the license number of the truck.

Chardon Police were notified of the calls, and were told that the truck had pulled into an

Arby's restaurant parking lot on Water Street.  Officers Bryant and Childs responded to the scene

and identified a red pickup truck matching the witnesses' descriptions sitting at the drive through

window.  The Officers pulled the police cruiser in behind the truck and verified that the license

number of the truck matched the license number taken down by the witnesses.  When the truck

started to pull away from the drive through window, the Officers activated the cruiser's lights to

effect a traffic stop.

Bryant and Childs exited their vehicle to speak with the driver.  Childs noticed that Plaintiff

was reaching for the glove compartment and warned Bryant, who then approached the Plaintiff's

truck from the passenger side.  He claims he saw a knife on the passenger seat and ordered Plaintiff

to place his hands on the steering wheel.  Plaintiff did not comply.  The Officers asked Plaintiff to

turn off the engine, and he did as they requested.  Plaintiff then got out of the truck without warning

and approached Childs on the drivers side of the truck.  Bryant joined them at the rear of the truck.

They spoke with Plaintiff for a few moments and explained that he had been stopped for suspicion

of drunk driving.  They conducted a pat-down search and discovered an unopened can of beer in the

front pocket of his shorts.  They indicate Plaintiff smelled of alcohol, had red glassy eyes, and was

-3-

slurring his speech.  They asked him to take a field sobriety test and he refused.  They handcuffed the Plaintiff and placed him in the back of the police cruiser.  Defendants deny slamming Plaintiff's face into the truck cap, and allege Plaintiff injured himself in the back of the police cruiser by deliberately slamming his head into the partition between the front seat and rear seat.  They indicate he became belligerent, and argumentative when placed in the police cruiser and actually damaged the vehicle.  They further deny placing handcuffs tightly on Plaintiff and contend Plaintiff never indicated that the handcuffs were too tight.

In support of these allegations, they included a copy of the video dashboard camera footage from the cruiser and video from the sally port and booking area of the jail as exhibits to their Motion for Summary Judgment.  The dash board video shows the truck at the drive through window, with the police cruiser obviously behind it.  (Dash Board Camera Video at 19:21:58).  Once the truck began moving, the Officers activated their lights and stopped it before the driver could leave the parking lot.  (Dash Board Camera Video at 19:23:17).  The Officers got out of the cruiser.  One Officer informs the other that the driver is reaching for the glove box.  (Dash Board Camera Video at 19:23:44).  The Officer approached the truck from the passenger side, and spoke to the driver through the passenger side window.  (Dash Board Camera Video at 19:23:50).  The other Officer appears to have stayed toward the back of the back of the truck on the drivers side.  Seconds later, the driver exited the vehicle and approached the Officer at the rear of the truck.  (Dash Board Camera Video at 19:24:04).  The other Officer joined them and yelled to the Plaintiff to put his hands on the truck.  Plaintiff complied.  (Dash Board Camera Video at 19:24:08).  The Officers positioned themselves slightly behind and on either side of the Plaintiff.  One of the Officers rested a hand on Plaintiff's back between his shoulder blades.  He did not appear to be exerting force on Plaintiff as

the Plaintiff was able to freely turn to respond to the Officers' questions.  The Officers spoke with Plaintiff for several minutes.  The conversation is muffled on the audio but it is clear that none of the parties is raising his voice at that time, and none of them appear to be agitated.  The Officers conducted a pat down search of the Plaintiff and checked all of his pockets.  (Dash Board Camera Video at 19:26:08).  Plaintiff did not resist the search.  The Officers moved to handcuff the Plaintiff.  He momentarily resisted but the Officers each took one arm and Plaintiff quickly acquiesced.  He was handcuffed without incident.  (Dash Board Camera Video at 19:28:17 to 19:28:49).  At that point, the Officers walked Plaintiff to the cruiser and placed him in the back seat.  Plaintiff does not appear to be physically resisting and walked under his own power to the police cruiser.  Plaintiff's face does not show any apparent injuries.  (Dash Board Camera Video at 19:29:03).

Once Plaintiff was placed in the cruiser, he began to become belligerent and agitated.  Although the dashboard camera was still facing the Plaintiff's truck, the audio from the tape was recording Plaintiff's tirades from within the cruiser.  Plaintiff ranted incessantly for forty minutes, slurring his words, and liberally imbuing his comments with profanity.  (Dash Board Camera Video 19:29:03 to end).  He continually insulted the Officers, attacked their intelligence, and threatened to sue them at least twenty-five different times.  He appears to be deliberately provoking the Officers to engage in a physical altercation.  At one point, after non-stop insults hurled at the Officers, he invited them to remove him from the vehicle to taze him.  The Officer did not respond to the invitation, so Plaintiff repeated it and asked the Officer, "want to taze me?"  The Officer indicated that he did not, and Plaintiff responded, "yeah, you do."  (Dashboard Camera Video at  19:57.37).

The two Officers left the cruiser to search Plaintiff's truck.  While this was occurring, Plaintiff screamed to the Officers at the top of his lungs demanding to know how they had probable

-5-

cause for the search.  The audio from the cruiser then picked up several loud banging noises from the back seat of the cruiser as well as laughter.  (Dash Board Camera Video 19:44:00 to 19:45:00). The Officers stopped the search and returned to the cruiser.  One of the Officers asked Plaintiff what he was doing, indicating Plaintiff was knocking his window out.  The Officers told Plaintiff to stop his actions, and then turned the camera toward the back seat before returning to the truck to finish their search.  Shortly thereafter, the camera recorded Plaintiff viciously banging his head against the plastic shield between the front and back seats of the cruiser, alternately screaming and laughing. When he looked up toward the camera, Plaintiff had a small trickle of blood on the bridge of his nose, although the source of the blood was not apparent.  (Dash Board Camera Video 19:45:00 to 19:47:15).  He continued to scream insults at the Officers and threaten to sue them.  Ironically, he was aware that his actions were being recorded, and stated that he could not wait for the Court to hear the tape, claiming the Officers would be made to look foolish.  The Officers did not raise their voices, and spoke minimally to the Plaintiff as they transported him to the Geauga County Jail. During the entire time he was in the back of the patrol car, Plaintiff did not complain that his handcuffs were too tight or that he required medical attention.

The Chardon Defendants assert six claims in their request for summary judgment.  First, they contend that the dashboard camera footage demonstrates that the Officers did not use excessive force during the arrest and did not slam Plaintiff's head against the cap of his truck.  Second, they claim Plaintiff was not denied appropriate medical care because he did not exhibit serious injuries that required treatment.  Third, they assert the Officers were not required to read Plaintiff *Miranda* warnings because they did not question him.  Fourth, they contend the traffic stop was constitutional. Fifth, they assert they are entitled to qualified immunity.  Finally, they indicate that the claims

-6-

against the City of Chardon are based on a theory of *respondeat superior* which does not state a claim for relief in a § 1983 action.

The Geauga County Sheriff asserts two claims in support of his Motion for Summary Judgment.  First, he claims that there are no allegations in the Complaint that plausibly state a claim against him in his individual or official capacities.  Second, he claims that Plaintiff failed to establish that a violation of his constitutional rights.  He states that dashboard camera video footage demonstrates that Officers Bryant and Childs did not use excessive force in arresting Plaintiff, did not deny him appropriate medical care, and were not required to read Miranda warnings to Plaintiff because they did not question him.

**Removal from State Court**

The Plaintiff first challenges the Defendants' removal of this action from state court.  He contends the state court has jurisdiction to hear federal and state law claims.  He requests that the case be remanded to the Geauga County Court of Common Pleas.

A Defendant may remove "any civil action brought in a State court of which the District Courts of the United States have original jurisdiction."  28 U.S.C. § 1441(a).  A civil action founded on a claim based on a federal statute may be removed regardless of the citizenship of the parties.  28 U.S.C. § 1441(b). Whenever a federal claim is joined with "one or more otherwise non-removable claims or causes of action, the entire case may be removed and the district court may determine all issues therein, or, in its discretion, may remand all matters in which State law predominates."  28 U.S.C. § 1441(c).

To remove a civil action from state court to federal court, the following pleading requirements must be met: (1) the Defendant or Defendants must file in the District Court a Notice

-7-

of Removal signed pursuant to Rule 11 of the Federal Rules of Civil Procedure and containing a

short and plain statement of the grounds for removal, along with a copy of all pleadings and orders

served upon the Defendant or Defendants; and (2) the Notice of Removal must be filed within 30

days of receiving the Complaint or Summons, whichever period is shorter, or within 30 days of

receiving an amended pleading, motion, order, or "other paper" from which the removability of the

action may first be ascertained. 28 U.S.C. § 1446(a),(b). There is no dispute that Defendants filed

a timely Notice of Removal on October 21, 2014. The asserted basis for removal was Plaintiff's

assertion of federal claims under 42 U.S.C. § 1983. The removal was proper. Plaintiff's Motion for

Objection and Answer to the Notice of Removal (ECF No. 6) is denied. His Motion to Strike the

Defendants' Response to his Motion for Objection to Removal (ECF No. 9) is also denied.

### Standard of Review for Summary Judgment

The Court now turns its attention to the Defendants' Motions for Summary Judgment.

Summary judgment is appropriate when the Court is satisfied "that there is no genuine issue as to

any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV.

P. 56(c). The burden of showing the absence of any such "genuine issue" rests with the moving

party:

> [A] party seeking summary judgment always bears the initial
> responsibility of informing the district court of the basis for its
> motion, and identifying those portions of 'the pleadings, depositions,
> answers to interrogatories, and admissions on file, together with
> affidavits, if any,' which it believes demonstrates the absence of a
> genuine issue of material fact.

*Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (citing FED. R. CIV. P. 56(c)). A fact is

"material" only if its resolution will affect the outcome of the lawsuit. *Anderson v. Liberty Lobby,*

*Inc.*, 477 U.S. 242, 248 (1986). Determination of whether a factual issue is "genuine" requires

-8-

consideration of the applicable evidentiary standards. The Court will view the Summary Judgment Motion in the light most favorable to the party opposing the Motion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

Summary judgment should be granted if a party who bears the burden of proof at trial does not establish an essential element of their case. *Tolton v. American Biodyne, Inc.*, 48 F.3d 937, 941 (6th Cir. 1995) (citing *Celotex*, 477 U.S. at 322). Accordingly, "[t]he mere existence of a scintilla of evidence in support of the Plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the Plaintiff." *Copeland v. Machulis*, 57 F.3d 476, 479 (6th Cir. 1995) (citing *Anderson*, 477 U.S. at 252). Moreover, if the evidence presented is "merely colorable" and not "significantly probative," the Court may decide the legal issue and grant summary judgment. *Anderson*, 477 U.S. at 249-50 (citations omitted). In most civil cases involving summary judgment, the Court must decide "whether reasonable jurors could find by a preponderance of the evidence that the [non-moving party] is entitled to a verdict." *Id.* at 252. The moving party need not introduce affirmative evidence to refute a non-moving party's claims, unless and until the non-moving party had presented sufficient evidence to support their claims. *See Celotex*, 477 U.S. at 324.

Once the moving party has satisfied its burden, the burden then shifts to the non-mover. The non-moving party may not simply rely on its pleadings, but must "produce evidence that results in a conflict of material fact to be solved by a jury." *Cox v. Kentucky Dep't of Transp.*, 53 F.3d 146, 149 (6th Cir. 1995). FED. R. CIV. P. 56(e) states:

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule,

> must set forth specific facts showing that there is a genuine issue for
> trial.

The Federal Rules identify the penalty for the lack of such a response by the nonmoving party as an

automatic grant of summary judgment, where otherwise appropriate. *Id.*

Though parties must produce evidence in support of and in opposition to a Motion for

Summary Judgment, not all types of evidence are permissible.  The Sixth Circuit has concurred with

the Ninth Circuit that " 'it is well settled that only admissible evidence may be considered by the trial

court in ruling on a Motion for Summary Judgment.' "  *Wiley v. United States*, 20 F.3d 222, 225-26

(6th Cir. 1994) (quoting *Beyene v. Coleman Sec. Servs., Inc.*, 854 F.2d 1179, 1181 (9th Cir. 1988)).

FED. R. CIV. P. 56(e) also has certain, more specific requirements:

> [Rule 56(e)] requires that affidavits used for summary judgment
> purposes be made on the basis of personal knowledge, set forth
> admissible evidence, and show that the affiant is competent to testify.
> Rule 56(e) further requires the party to attach sworn or certified
> copies to all documents referred to in the affidavit. Furthermore,
> hearsay evidence cannot be considered on a motion for summary
> judgment.

*Wiley*, 20 F.3d at 225-26 (citations omitted).  The judge's sole function is to determine whether there

is a genuine factual issue for trial; this does not exist unless "there is sufficient evidence favoring

the nonmoving party for a jury to return a verdict for that party." *Id.*

Where there is a video of the events at issue, the Court must determine as a matter of law

whether the events depicted on the video, taken in the light most favorable to the Plaintiff,

demonstrate that there is no genuine issue of triable fact for a jury to consider. *Dunn v. Matatall*,

549 F.3d 348, 353 (6th Cir. 2008); *see also Scott v. Harris*, 550 U.S. 372, 380 (2007).  "When

opposing parties tell two different stories, one of which is blatantly contradicted by the record [such

as a video recording of the events], so that no reasonable jury could believe it, a Court should ... view[ ] the facts in the light depicted by the videotape." *Scott*, 550 U.S. at 380.

## Discussion

### I.     Geauga County Sheriff

The Geauga County Sheriff contends he is entitled to summary judgment because Plaintiff failed to plead his claims with sufficient factual allegations to meet the requisite pleading standard, and offers no facts suggesting he has a plausible claim against the Geauga County Sheriff, either in his individual capacity or his official capacity. He contends there is no genuine issue of material fact and he is entitled to judgment as a matter of law.

Indeed, Plaintiff's Complaint contains very few factual allegations, and none of those allegations describe actions personally performed by Geauga County Sheriff Daniel McClelland. Plaintiff cannot establish the individual liability of any Defendant absent a clear showing that the Defendant was personally involved in the activities which form the basis of the alleged unconstitutional behavior. *Rizzo v. Goode*, 423 U.S. 362, 371 (1976); *Mullins v. Hainesworth*, No. 95-3186, 1995 WL 559381 (6th Cir. Sept. 20, 1995). Plaintiff has presented no evidence to suggest there are facts in dispute which support a viable claim against the Sheriff in his individual capacity.

In addition, Plaintiff has presented no evidence to suggest there is a genuine issue of material fact to support a claim against the Sheriff in his official capacity. A suit against a public servant in his official capacity imposes liability on the office he represents. *Brandon v. Holt*, 469 U.S. 464, 471 (1985). Plaintiff's claims against the Sheriff in his official capacity are therefore construed against Geauga County.

As a rule, local governments may not be sued under 42 U.S.C. § 1983 for an injury inflicted

-11-

solely by employees or agents under a *respondeat superior* theory of liability. *See Monell v. Department of Soc. Servs.*, 436 U.S. 658, 691(1978). "Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." *Id.* at 694.  A "municipal policy" includes "a policy statement, ordinance, regulation, or decision officially adopted and promulgated. *Powers v. Hamilton County Pub. Defender Comm'n*, 501 F.3d 592, 607 (6th Cir. 2007) (quoting *Monell*, 436 U.S. at 690). "An actionable 'custom,' in contrast, 'has not received formal approval through ... official decisionmaking channels. *Id.*  Plaintiff may establish the existence of a custom by showing that policymaking officials knew about and acquiesced in the practice at issue. *Id.* (quoting *Monell*, 436 U.S. at 690-91). A "custom" for purposes of *Monell* liability must be "so permanent and well-settled as to constitute a custom or usage with the force of law." *Monell*, 436 U.S. at 691. A "custom" is a legal institution not memorialized by written law. *Feliciano v. City of Cleveland*, 988 F.2d 649, 655 (6th Cir. 1993).  Moreover, to satisfy the *Monell* requirements, the municipal policy or custom must be the moving force behind the constitutional injury. *Searcy v. City of Dayton*, 38 F.3d 282, 287 (6th Cir. 1994).  Plaintiff must identify the policy, connect the policy to the municipality itself and show that the particular injury was incurred because of the execution of that policy." *Coogan v. City of Wixom*, 820 F.2d 170, 176 (6th Cir. 1987).

In this case, the Sheriff argues that the Plaintiff has not identified a particular policy or custom of Geauga County that resulted in a violation of Plaintiff's constitutional rights. Plaintiff merely states in his Complaint that the "Defendant Policymakers have failed to enforce departmental policies regarding the reporting of incidents of possible excessive force and failed to supervise or

discipline against the use of excessive force." (ECF No. 1-1 at 8, ¶8). The purported excessive force, however, was alleged to have been committed by two Chardon Police Officers. Neither Geauga County nor the Geauga County Sheriff supervise the Chardon Police Officers, and therefore the policies and customs of Geauga County or failure of the City of Chardon to discipline its personnel are irrelevant in that analysis. Plaintiff has not presented evidence to rebut the Sheriff's assertions and the Geauga County Sheriff is entitled to judgment as a matter of law. The Defendant's Motion for Summary Judgment (ECF No. 15) is granted.

## II.     Officers Bryant and Childs

### A.     Excessive Force

Officers Bryant and Childs deny that they used excessive force against Plaintiff during his arrest by slamming his head into the cap of his pick up truck and by abruptly and tightly forcing handcuffs on his wrists. They contend the dash board camera video footage demonstrates that this incident is a complete fabrication and that any injuries to Plaintiff were self-inflicted.

Claims regarding police officers' use of excessive force in the course of an arrest or other seizure are governed by the Fourth Amendment. *See Phelps v. Coy,* 286 F.3d 295, 299 (6th Cir. 2002) (citing *Graham v. Connor,* 490 U.S. 386, 395 (1989)). The Fourth Amendment requires that an officer's use of force be objectively reasonable. *See Graham,* 490 U.S. at 396. An Officer making an investigative stop or arrest has "the right to use some degree of physical coercion or threat thereof to effect it." *Id.* The question for the Court to determine is whether, under the totality of the circumstances, the Officers' actions were objectively reasonable. *Miller v. Sanilac Cnty.,* 606 F.3d 240, 251 (6th Cir. 2010); *Fox v. DeSoto,* 489 F.3d 227, 236-37 (6th Cir. 2007) (citing *Kostrzewa v. City of Troy,* 247 F.3d 633, 639 (6th Cir. 2001)).

The dashboard camera video footage demonstrates that the Officers did not slam Plaintiff's head into the cap of his pick up truck. This video shows the Plaintiff exiting from the truck of his own accord. He was asked to put his hands on the back of the truck and he complied. The Officers spoke to him for several minutes without incident and then conducted a pat down search of the Plaintiff. Plaintiff did not resist the search and the Officers did not use force to conduct it. The Officers moved to handcuff the Plaintiff. He momentarily resisted but the Officers each took one arm and Plaintiff quickly acquiesced. He was handcuffed without incident. At that point, the Officers walked Plaintiff to the cruiser and placed him in the back seat. Plaintiff walked under his own power, without resistence, to the police cruiser. None of the Officers' actions could be reasonably construed as slamming Plaintiff's face into the cap of his truck "result[ing] in injuries to his face that were profusely bleeding." (ECF No. 1-1 at 9, ¶ 11). In fact, when Plaintiff is walking toward the police cruiser after being handcuffed, the video does not show an injury to Plaintiff's face, much less one that is bleeding profusely.

The video does reveal how Plaintiff sustained injuries to his face. The camera was turned toward Plaintiff in the back seat of the police cruiser and captured Plaintiff forcefully and repeatedly slamming his own head into the shield between the front and back seats of the squad car. When he stopped this activity, the camera recorded a minor trickle of blood on the bridge of his nose. Plaintiff did not reply to the Defendants' Motion for Summary Judgment and does not offer any explanation for what appears to be an obvious fabrication of events. There is no genuine issue of material fact to be resolved with respect to this claim, and the Officers are entitled to summary judgment as a matter of law.

The Defendants also dispute that they abruptly and tightly forced handcuffs on Plaintiff's

wrists causing injury.  The Fourth Amendment also prohibits unduly tight or excessively forceful handcuffing during the course of a seizure.  *See Kostrzewa v. City of Troy*, 247 F.3d 633, 639 (6th Cir. 2001).  In order for a handcuffing claim to survive summary judgment, the Plaintiff must offer sufficient evidence to create a genuine issue of material fact that: (1) he complained the handcuffs were too tight; (2) the Officers ignored those complaints; and (3) he experienced "some physical injury" resulting from the handcuffing.  *Morrison v. Board Of Trustees Of Green Tp.*, 583 F.3d 394, 401 (6th Cir. 2009); *see Lyons v. City of Xenia*, 417 F.3d 565, 575-76 (6th Cir. 2005).

Once again, the dashboard video refutes Plaintiff's assertion that the Officers used excessive force in tightening his handcuffs.  The video shows that when the Officers announced they were arresting Plaintiff, he resisted for a fraction of a second.  That action was little more than a flinch. At that point the Officers were standing on either side of Plaintiff, and each took one of Plaintiff's arms.  He appears to relax even before the Officers moved his hands behind his back.  There was no struggle when the Officers placed the handcuffs on his wrists.  The Officers escorted the Plaintiff to the squad car.  He did not resist and walked under his own power.  He did not complain that the handcuffs are too tight.  Moreover, after he is placed in the police cruiser, he talked incessantly for over forty minutes hurling insults at the Officers.  At no time during his unceasing tirade did Plaintiff indicate to the Officers that his handcuffs were too tight.  The tape also reveals that while he was trying to kick out the window of the police cruiser, he attempted to yank his hands through the handcuffs.  That effort proved to be unsuccessful.  If marks were left on his wrists, it is very plausible that these wounds were also self-inflicted.  The Officers presented evidence to support their claim that they did not use excessive force in applying the handcuffs.  Plaintiff has not responded to the Motion nor has he supplied the Court with evidence to rebut the Defendants'

assertions and evidence.  There are no material facts in dispute, and Officers Bryant and Childs are entitled to judgment as a matter of law on the excessive force claims.

### B.    Denial of Medical Care

The Officers also dispute that they denied Plaintiff immediate medical attention for obvious injuries.  "The Eighth Amendment prohibition on cruel and unusual punishment protects prisoners from the 'unnecessary and wanton infliction of pain.'" *Baker v. Goodrich*,649 F.3d 428, 434 (6th Cir. 2011) (quoting *Whitley v. Albers*, 475 U.S 312, 319 (1986)).  Pretrial detainee claims, though they sound in the Due Process Clause of the Fourteenth Amendment rather than the Eighth Amendment, *City of Revere v. Mass. Gen. Hosp.*, 463 U.S. 239, 244 (1983), are analyzed under the same rubric as Eighth Amendment claims brought by prisoners.  *See Roberts v. City of Troy*, 773 F.2d 720, 723 (6th Cir. 1985) (citing *Bell v. Wolfish*, 441 U.S. 520, 545 (1979)).  Fundamentally, the "'concept underlying the Eighth Amendment . . . is nothing less than the dignity of [hu]man [kind].'" *Hope v. Pelzer*, 536 U.S. 730, 738 (2002) (quoting *Trop v. Dulles*, 356 U.S. 86, 100 (1958)).

Proving an Eighth Amendment claim requires that the Plaintiff make a showing of deliberate indifference.  *Harrison v. Ash*, 539 F.3d 510, 518 (6th Cir. 2008) (citing *Farmer v. Brennan*, 511 U.S. 825, 835 (1994)); *see also Estelle v. Gamble*, 429 U.S. 97(1976).  Deliberate indifference has two components to it: objective and subjective.  *Harrison*, 539 F.3d at 518.  The objective component first demands a showing that the detainee faced a substantial risk of serious harm.  *Id.*  The objective component, however, is not met by proof of such a substantial risk of serious harm alone.  The objective component further requires the Court to assess whether society considers the risk of which the prisoner complains to be so grave that it violates contemporary standards of decency.  *Helling v. McKinney*, 509 U.S.25, 36 (1993).  Therefore, the objective component of

deliberate indifference is met upon a showing that a detainee faced a substantial risk of serious harm and that such a risk is one that society chooses not to tolerate.

In the context of a claim for denial of medical care, the Plaintiff must provide evidence of "serious medical needs." *Farmer*, 511 U.S. at 834. A constitutional claim for denial of immediate or emergency medical attention must concern medical needs that are obvious even to a layperson because they involve life-threatening conditions or situations where it is apparent that delay would detrimentally exacerbate the medical problem. *Blackmore v. Kalamazoo County*, 390 F.3d 890, 896 -98 (6th Cir. 2004). A delay or even denial of medical treatment for superficial, nonserious physical conditions, however, does not constitute a constitution violation. *Id.* People in the regular and ordinary events and activities in their daily lives do not seek medical care for the injuries they receive unless it obviously appears to be of a serious nature, or persists after home remedy care. Therefore, the seriousness of the injury must be more than *de minimis*. In other words, injuries such as bruises, cuts and abrasions which are treatable at home and with over-the-counter bandages or medications are not sufficiently serious to invoke the protection of the constitution. *Id.*

As to the subjective component, Plaintiff must show that the Defendants had "a sufficiently culpable state of mind." *Harrison*, 539 F.3d at 518. This state of mind is shown "where 'the official knows of and disregards'" the substantial risk of serious harm facing the detainee. *Id.* (quoting *Farmer*, 511 U.S. at 837). That is, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837. In particular, "a plaintiff alleging deliberate indifference must show more than negligence or the misdiagnosis of an ailment." *Id.* Accordingly, when an official provides medical care, albeit carelessly or inefficaciously, to a prisoner, he has not displayed a deliberate

indifference to the prisoner's needs, but merely a degree of incompetence which does not rise to the

level of a constitutional violation. *Id.*

In this case, the Defendants dispute that Plaintiff had a sufficiently serious injury and contend

they were not aware of any injury needing immediate emergency medical treatment.  They refer to

the dashboard video and the booking video to suggest that Plaintiff was not bleeding profusely as

he claimed in his Complaint.   The video from inside the police cruiser showed a small trickle of

blood on the bridge of Plaintiff's nose immediately after Plaintiff banged his head against the

partition between the front and back seats of the car; however, later images of his face do not show

any blood, cuts or bruising.  Images of Plaintiff captured at the police station do not evidence any

obvious injuries.  Likewise, Plaintiff did not complain of injuries or request medical treatment.  He

ranted at the Officers for forty minutes, and even invited them to use their tazers on him, but did not

indicate he was injured or state that he needed medical treatment.  The evidence presented by the

Defendants contradicts Plaintiff's allegation that the Officers denied him medical care for obviously

serious injuries requiring immediate professional medical treatment.  Plaintiff did not respond to the

Motion for Summary Judgment with evidence to suggest that there is a genuine issue of fact for trial,

and the Officers are entitled to summary judgment on this claim as well.

### C.    Miranda Warnings

Defendants assert that as a matter of law, they were not required to give Plaintiff Miranda

warnings at the time of his arrest because they were not questioning him. *See Miranda v. Arizona*,

384 U.S. 436, 444 (1966).  They are correct.  The Constitution and laws of the United States do not

guarantee Plaintiff the right to *Miranda* warnings.  They only guarantee him the right to be free from

self-incrimination.  *Miranda* warnings are a procedural safeguard rather than a right explicitly stated

-18-

in the Fifth Amendment.  The remedy for a *Miranda* violation is the exclusion from evidence of any ensuing self-incriminating statements.  *See Chavez v. Martinez*, 538 U.S. 760, 772 (2003)(observing that the failure to comply with *Miranda* does not, in and of itself, give rise to a constitutional claim, and the Fifth Amendment's protections may only be invoked to exclude at trial evidence taken during the interview).  The remedy does not subject a police officer to civil liability.  *McKinley v. City of Mansfield*, 404 F.3d 418, 432 n. 13 (6th Cir. 2005)(recognizing that a civil claim for damages based upon an officer's failure to read a suspect his or her Miranda warnings is "squarely foreclosed" by the decision in *Chavez*).

Furthermore, even if Plaintiff could proceed with a cause of action under 42 U.S.C. § 1983 for violation of his Fifth Amendment rights, his claim would fail as a matter of law.  There must first be a genuine issue of material fact as to whether a custodial interrogation occurred.  Absent a custodial interrogation, the requirement to recite *Miranda* warnings is not triggered.  *See United States v. Woods*, 711 F.3d 737, 740 (6th Cir. 2013) (citing *Miranda*, 384 U.S. at 444; *Berkemer v. McCarty*, 468 U.S. 420, 442 (1984)).  A custodial interrogation exists when the Plaintiff is in police custody and the police officers engage in words or actions that they should know are reasonably likely to elicit an incriminating response.  *United States v. Cole*, 315 F.3d 633, 636 (6th Cir. 2003) (citing *Rhode Island v. Innis*, 446 U.S. 291, 302 (1980)); *Hoffner v. Bradshaw*, 622 F.3d 487, 511-12 (6th Cir. 2010) ("Procedural safeguards of *Miranda* apply only to suspects subject to custodial interrogation.").  Here, there is no indication that Plaintiff was interrogated by Officer Bryant or Officer Childs while in custody before they read Plaintiff his *Miranda* warnings.  In fact, the video from the dash board camera suggests the Officers attempted to say very little to Plaintiff amid his incessant insults and rants.  Absent a custodial interrogation, the Officers were not required to read

him *Miranda* warnings.

In addition, Plaintiff does not allege he made incriminating statements in the police cruiser during questioning which were used against him at trial.  There is no indication in either the Complaint or the video tapes provided with the Defendants' Motions for Summary Judgment that Plaintiff's Fifth Amendment rights were violated.  The Defendants are entitled to judgment on this claim as a matter of law.

### D.    Traffic Stop

The Chardon Defendants also contend that the traffic stop was constitutional.  Plaintiff states in his Complaint that the Defendants deprived him of "clearly established fundamental rights contained in the Fourth Amendment and or the Eighth Amendment and or the Fourteenth Amendment to the U.S. Constitution and the deprivation occurred while under the color of state law under 42 U.S.C. § 1983." (ECF No. 1-1 at 8, ¶ 3).  He also mentions that the Officers executed an investigative stop.  (ECF No. 1-1 at 8, ¶ 5).  To the extent that these statements can be liberally construed as a challenge to the constitutionality of the traffic stop in a claim for wrongful arrest, the Officers are entitled to summary judgment.

When an officer has "reasonable suspicion" that criminal activity may have occurred, the officer may conduct a limited seizure and briefly detain a person for investigative purposes.  *Terry v. Ohio*, 392 U.S. 1, 30-31 (1968).  A *Terry* stop must be supported by specific and articulable facts that would "warrant a man of reasonable caution in the belief that the action taken was appropriate." *Terry*, 392 U.S. at 21-22.  In other words, "[t]he officer must be able to articulate more than an 'inchoate and unparticularized suspicion or hunch' of criminal activity." *Illinois v. Wardlow*, 528 U.S. 119, 124 (2000) (citing *Terry*, 392 U.S. at 27).  Additionally, the stop must be justified at its

inception, and it must be reasonably related in scope to the circumstances which justified the interference in the first place. *Terry*, 392 U.S. at 19-20. The Court must consider the totality of the circumstances to determine the validity of a *Terry* stop. *United States v. Martin*, 289 F.3d 392, 396 (6th Cir. 2002) (citing *United States v. Roberts*, 986 F.2d 1026, 1029 (6th Cir. 1993)).

Furthermore, a police officer legally may stop a car when he has probable cause to believe that a civil traffic violation has occurred. *United States v. Sanford*, 476 F.3d 391, 394 (6th Cir. 2007). Probable cause is a reasonable ground for belief supported by less than prima facie proof but more than mere suspicion. *United States v. Jackson*, 470 F.3d 299, 306 (6th Cir. 2006) (quoting *United States v. Bennett*, 905 F.2d 931, 934 (6th Cir. 1990)).

In this case, there appears to be no genuine issue of fact regarding the Officers' reason for initiating the stop. Two witnesses telephoned police to report a vehicle matching the description of Plaintiff's truck driving erratically. Both witnesses provided police with the license number of the vehicle. They also reported its general location to police. The Officers, acting on those calls, found a vehicle matching the description at the location it was reported to be at and verified its license number with that reported by the witnesses. At that point, the Officers at least had reasonable suspicion to conduct an investigative stop. The dash board video shows that Plaintiff drove the vehicle from the take out window at the Arby's restaurant before they activated the cruiser's lights to initiate the stop. When they approached the vehicle, Plaintiff got out and walked toward the Officers. The Officers reported that Plaintiff smelled of alcohol, slurred his speech, and had red, glassy eyes. (ECF No. 12-3 at 102). They had probable cause to believe he was driving under the influence of alcohol to support his arrest. Plaintiff did not respond to the Motion for Summary Judgment to offer evidence that the Officers lacked probable cause. There is no genuine issue of

material fact supporting this claim and summary judgment is granted to the Defendants.

### III.    City of Chardon

Finally, the City of Chardon and the Chardon Police Department are entitled to judgment as a matter of law. Police departments are not *sui juris*; they are merely sub-units of the municipalities they serve. *See Williams v. Dayton Police Dept.*, 680 F.Supp. 1075, 1080 (S.D. Ohio 1987). The claims against the police department are therefore construed against the City.

A municipality may not be sued under 42 U.S.C. § 1983 for an injury inflicted solely by employees or agents under a *respondeat superior* theory of liability. *See Monell*, 436 U.S. at 691. To prevail on a claim against the City of Chardon in this case, Plaintiff must identify a particular policy of the City, connect that policy to the municipality itself and show that the particular constitutional injury was incurred because of the execution of that policy. *Coogan v. City of Wixom*, 820 F.2d 170, 176 (6th Cir. 1987). The City of Chardon contends that Plaintiff did not  demonstrate a violation of his constitutional rights by Officers Bryant and Childs, and did not connect a violation to a specific policy of the City.   Plaintiff has not responded to the Motion and his Complaint does not contain any facts to support this claim. Summary judgment is granted to the City of Chardon.

### Attorney Fees

Finally, while the Court is very tolerant of legal errors from *pro se* litigants, it does not excuse blatant fabrications of the factual allegations in the Complaint nor will it tolerate pleadings submitted in bad faith for the sole purpose of harassing the Defendants. Attorney's fees may be awarded to prevailing Defendants in civil rights litigation under 42 U.S.C. § 1988 upon a finding that the suit was frivolous, unreasonable, or without foundation. *Hughes v. Rowe*, 449 U.S. 5, 14 (1980); *Christiansburg Garment Co. v. EEOC*, 434 U.S. 412, 421 (1978); *Wolfe v. Perry*, 412 F.3d 707, 720

(6th Cir. 2005); *N.E. v. Hedges*, 391 F.3d 832, 836 (6th Cir. 2004).  The dashboard camera footage supports the Defendants' contention that the Plaintiff presented fictional allegations in his pleading in order to harass the Defendants with a lawsuit. As Plaintiff's Complaint arguably meets the criteria of § 1988, the Court will entertain the issue of the Plaintiff's payment of the Defendants' reasonable attorney fees upon a Motion from the Defendants filed within ten (10) days from the date of this Order.

### Conclusion

Accordingly, Defendants' Motions for Summary Judgment pursuant to Federal Civil Procedure Rule 56 (ECF Nos. 12 and 15) are granted, and this action is dismissed.  Plaintiff's Motion for Objection and Answer to the Notice of Removal (ECF No. 6) and Motion to Strike the Defendants' Response to his Motion for Objection to Removal (ECF No. 9) are denied.  The Court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that an appeal from this decision could not be taken in good faith.[1]  In addition, the Defendants shall have ten (10) days from the date of this Order to submit a Motion for Reasonable Attorney Fees.

IT IS SO ORDERED.

DONALD C. NUGENT
UNITED STATES DISTRICT JUDGE

Dated: April 13, 2015

---

[1]    28 U.S.C. § 1915(a)(3) provides:

An appeal may not be taken *in forma pauperis* if the trial court certifies that it is not taken in good faith.

-23-